EichardsoN, J.,
delivered the opinion of the court:
The claimant was a private in the Capitol police from July 1, 1875, to June 30,1876, both inclusive, and has received the full amount of compensation for that service, $1,400, as appropriated by. Congress in the “Act making appropriations for the legislative, executive, and judicial expenses of the Government for the year ending June 30,1876, and for other purposes,” approved March 3, 1875 (18 Stat. L., 345). He brings this action to recover $1S4 more, on the grounds, as urged by his counsel, that at the time of the passage of the Legislative, Executive, and Judicial Appropriation Act of March 3, 1873 (17 Stat. L., 485), better known as the increase of salary act, his compensation was fixed by law at $1,584; that it was increased 15 per cent, by that act, making it $1,821.60, as set forth in the Eevised Statutes (§ 1S22); and that it was restored to the former rate by the Act January 20, 1874 (18 Stat. L., 4), repealing so much ot said act of March 3, 1873, as provided for an increase of the compensation of public officers and employes, and thereby so far repealing the provisions of the Eevised Statutes.
The Eevised Statutes were passed June 22, 1874, but embraced the statutes in force December 1, 1873 (Itev. Stats., § 5595). Between those dates Congress passed many acts repealing and altering'previous statutes which were incorporated into the revision. It is no doubt the correct construction that all such acts are to be taken as having to that extent altered the Eevised Statutes. (Eev. Stats., § 5601; In re The Oregon Bulletin Printing and Publishing Company, 3 Saw., 614.)
The only point here in controversy is whether or not before the 3d of March, 1873, the rate of compensation of the Capitol police was fixed by laws in force at that time within the mean *82 ing of the Act January 20, 1874" (18 Stat. L., 4), and so continues.
The Capitol police were first provided for by the Act May 2,1828, chapter 45, § 4 (4 Stat. L., 260), by which, as assistants of the Commissioner of Public Buildings, they were to receive a reasonable «compensation for their services, to be allowed by the presiding officers of the two houses of Congress, one moiety to be paid out of the contingent fund of the Senate and the other moiety out of the contingent fund of the House of Repre-senta tives. This gave to the presiding officers for the time being the power and the duty of making such allowance as they saw fit. That duty seems to have been exercised in an informal manner, except in the year 1840, when, on the 20th of July, the President of the Senate and Speaker of the House joined in a written order to the Commissioner of Public Buildings, directing him to pay “ to the police officers of the Capitol the following sums, respectively: To D. M. Wilson (principal), per year, $1,450; to the assistant police officers each, per year, $1,100.” It is evident that this order was not made to establish fixed and permanent salaries, to extend beyond the period for which the officers were elected, because, if that had been the intention, a temporary incumbent would not have been specified by name.
From year to year in the appropriation acts a sum in gross was appropriated for the Capitol police, without specifying any number of such officers, that being left to the determination of the Commissioner of Public Buildings, subject to the rules prescribed by the presiding officers of the two houses of Congress under' the act of May 2, 1828, before referred to. •
By the Act o/1854, chapter 52, § 2 (10 Stat. L., 276), an addition of 20 per cent, was made to the pay of the Capitol police, and an appropriation therefor was made by the fourth section. The Thirty-ninth Congress, by Act July 23, 1866 (14 Stat. L., 192), after having appropriated in gross, in the usual way, ‘ for Capitol police, twenty-one thousand four hundred and eighty dollars,” for the fiscal year ending June 30,1867, and providing that three hundred and thirty dollars thereof might be used for the then fiscal jear, subsequently, on the 2Sth of July, by act of that date, chapter 296, § 18 (14 Stat. L., 323), added 20 per cent, to the then present pay of certain officers and employés of Congress, including the police, to commerce with that Congress, and an appropriation was made therefor.
*83 In the Act March 2,1867, chapter 166 (14 Stat. L., 442), making appropriations for the legislative, executive, and judicial expenses of the Government for the year ending June 30,1868, Congress for the first time made appropriation for a specific number of police at a specific compensation. This took from the presiding officers of the two houses all the power over the matter which until' then they had possessed since the act of May 2,1828, and from that time forward Congress has by annual appropriations fixed for each year, respectively, and no longer, both the number and pay of the Capitol police. (15 Stat. L., 94, 284 j 16 Stat. L., 232, 477, 520; 17 Stat, L., 62, 122, 488; 18 Stat. L., 86, 345, 402;, 19 Stat. L., 144,295; 20 Stat, L., 180.)
By the increase of salary act, of March 3,1873, which was the regular legislative, executive, and judicial appropriation act tor the year ending June 30,1874, the annual salaries of mauy officers were specificalty increased; but the appropriation for the Capitol police was in the usual form, specifying the number and amount to be paid each for one year (17 Stat. L., 488). In another part of the same act an appropriation was added of 15 per cent. “ to the pay of all the present employés of the Senate and House of Representatives, including the employés in the Library of Congress and those under the Commissioner of Public Buildings and Grounds now employed in the Capitol building.” This certainly did not fix a permanent salary to such employés, but only provided for their compensation for one year, as had always been done previously.
So when the Act January 20,1874, chapter 11 (18 Stat. L., 4) was passed repealing that part of the Act of March 3,1873 (ch. 226) increasing salaries, and enacting that “ the salaries, compensation, and allowances of all said persons shall be fixed by the laws in force at the time of the passage of said act,” Congress did not intend to fix and establish permanent salaries where none had been established before, but meant to restore all officers and emxfioyés to their status as to compensation which they occupied before that act; that is, salaried officers to have the salaries before established, and employés whose compensation depended upon annual appropriation to have such rátes from year to year as Congress should appropriate for. A.s to the Capitol police, this is so expressed in Revised Statutes, section 1821, where it is enacted that there shall be a captain of the Capitol police and such other members, with such compen *84 sation, respectively, as may be appropriated, for by Congress from year to year.” This, we think, correQtly states the law as it exists now and has existed for a period extending back far beyond the time when the act of March 3, 1873, was 'passed. Section 1822, reciting the number and compensation of the. Capitol police, if standing alone, would seem to be inconsistent with this construction; but when taken in connection with the next preceding section, and with the course of legislation on the subject for fifty years, we are of opinion that it must be construed as subject to the limitation that both the number and the rate of compensation of the Capitol police may be varied by and must depend upon the action of Congress from year to year in making appropriations.
Such has been practically the uniform contemporaneous construction by successive Congresses, by the public officers who have administered the law, and by the employés themselves, who have received in monthly payments the amounts appropriated for them, and have given receipts therefor in full payment for their services, and we see no reason to change the same or to doubt its correctness.
The judgment of the court is that the claimant’s petition be dismissed.
Nott, J., was not present at the hearing of this, case, and took no part in the decision.